1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Gastelum, ) | No. CV05-00645-PHX-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Abbott Laboratories, ) | |
| Defendant. ) | |

The court has before it Plaintiff's Motion for Extension of Time to File Appeal, Doc. # 67; the Response, Doc. # 71; and the Reply, Doc. # 73.[1]

Federal Rule of Appellate Procedure 4(a)(1)(A) instructs litigants to file a notice of appeal in a civil case within 30 days after the judgment or order appealed from is entered by the district clerk. Intermediate Saturdays, Sundays and legal holidays are not excluded from this computation because the applicable time period is more than 11 days. Fed. R. Civ. P. 6(a). An attorney who fails to file a notice of appeal within the prescribed time period may not take an appeal as of right. Fed. R. App. P. 3(a)(1). However, Fed. R. App. P. 4(a)(5)(A)

---

[1] Plaintiff's untimely Notice of Appeal to the 9th Circuit, Doc. # 69, was erroneously docketed by the clerk on October 25, 2006, Doc. # 70. This ministerial act cannot be equated with an implicit grant of an extension of time by the district court, which requires the approbation of the trial judge under Fed. R. App. P. 4(a)(5)(A). *United States v. Long*, 905 F.2d 1572, 1574 (D.C. Cir. 1990).

provides a 30 day grace period within which a litigant who is not entitled to appeal as of right may nevertheless ask the court for an extension of time to file a notice of appeal.

The ameliorative Rule provides in relevant part: "The district court may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) . . . that party shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A). A district court's decision to grant or deny a motion under this Rule is reviewed for abuse of discretion. *Pincay v. Andrews*, 389 F.3d 853, 858 (9th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 961 (2005). Plaintiff's Motion is denied for the reasons set forth below.

**I.     Facts**

Pursuant to Fed. R. App. P. 4(a)(1)(A), Plaintiff could have taken an appeal as of right from this court's August 22, 2006 dispositive Order until September 21, 2006. Plaintiff did not file a notice of appeal within the applicable 30 day time period. Plaintiff's counsel discovered that the time for taking an appeal as of right had lapsed on October 4, 2006. (Doc. #67 at 2.) Plaintiff's counsel met with Plaintiff to discuss the possibility of an appeal on October 12, 2006, at which time Plaintiff requested that the appeal be pursued. (*Id*. at 3.) Plaintiff then filed this Motion under Fed. R. App. P. 4(a)(5)(A) on October 20, 2006, just before the 30 day grace period for requesting an extension of time to file a notice of appeal was set to expire.

Plaintiff's counsel avers that his failure to file a timely notice of appeal should be excused under Fed. R. App. P. 4(a)(5)(A) by (1) his extensive involvement in other litigation matters during the applicable time period; and (2) his secretary's miscalendering of the expiration of the 30 day deadline as October 4, 2006, rather than September 21, 2006, "due to the mistaken belief that intervening weekends and holidays were not included in calculating the thirty day period." (Doc. # 67 at 2.)

Plaintiff's counsel expands upon the first of his two excuses by noting that he "had just started a lengthy complex civil jury trial" when the court's August, 22, 2006 Order was filed. (*Id*. at 1-2.) Plaintiff's counsel, a sole practitioner, worked "full time" on this case

1  until September 15, 2006, at which date he directed his attention to a variety of other pending
2  matters. (Aff. Richard M. Martinez.) Mr. Martinez generally avers that his trial
3  "commitment[s] became all consuming and demanded 100% of counsel's attention," leaving
4  no time for him to consider taking an appeal as of right in this case before the expiration of
5  the 30 day deadline . (Doc. # 67 at 4.) "But for trial," he contends, "the mistake on the part
6  of counsel would not have occurred and an appeal would have been timely filed by
7  September 21, 2006." (*Id.*)

8  The second excuse proffered by Plaintiff's counsel turns upon Mr. Martinez's
9  delegation of calendering duties to his secretary, Anzorena Fuentes. In her affidavit, Ms.
10 Fuentes states that while Mr. Martinez was in trial on other matters, he "relied on me to tickle
11 (calendar) the appeal deadline in the *Gastelum* case and specifically asked if such had
12 occurred to which I responded yes." (Aff. Anzorena Fuentes.) Plaintiff's counsel
13 "discovered that the deadline to file the appeal in *Gastelum* had been incorrectly entered in
14 to the office calendering system" on October 4, 2006, the very day in which the deadline to
15 file a notice of appeal as calendared by Ms. Fuentes was to lapse. (*Id.*) Plaintiff's counsel
16 urges that the system that he has devised to avoid missing important court deadlines broke
17 down in this isolated case. Although Mr. Martinez "and his secretary routinely double check
18 and independently enter all calendar deadlines in the system," his trial engagements and his
19 secretary's reduced office hours together caused the system to fail. (Doc. # 67 at 2-3.)
20 Plaintiff's counsel has submitted no evidence that he actually trained his secretary to
21 calculate appellate deadlines properly. Finally, Plaintiff states that she "and her counsel have
22 acted in good faith." (*Id.* at 4.)

23 **II.   Legal Analysis**

24       **A.   Plaintiff Must Show "Excusable Neglect," Not "Good Cause"**

25 The text of Fed. R. App. P. 4(a)(5)(A) offers relief to a putative appellant who can
26 show either "excusable neglect" or "good cause." However, the arguments made by Plaintiff
27 and Defendant hinge exclusively upon that most elastic of legal phrases, "excusable neglect."
28 This is appropriate because the Advisory Committee has said that "the excusable neglect

standard applies in situation in which there is fault," while the "good cause standard applies in situations in which there is no fault . . . [and] the need for an extension is usually occasioned by something that is not within the control of the movant." Advisory Committee Note to 2002 amendment to Rule 4(a)(5). *See Mirpuri v. ACT Mfg.*, 212 F.3d 625, 630 (1st Cir. 2000) (noting that fault on the part of the movant takes the case out of "the isthmian confines of the 'good cause' rubric"). The Supreme Court had occasion to parse the meaning of "excusable neglect" in the context of the Federal Rules of Bankruptcy Procedure in *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993). The Court's analysis in that case is controlling here.

### B.     *Pioneer* and the Existence of Excusable Neglect

The Court in *Pioneer* began its deconstruction of the term "excusable neglect" by noting that "[t]here is, of course, a range of possible explanations for a party's failure to comply with a . . . filing deadline," ranging from unforeseeable *force majeure* to the deliberate flouting of a procedural rule. 507 U.S. at 387. Justice White noted a split among the Courts of Appeal: some circuits had concluded that any showing of fault on the part of the late filer would defeat a claim of "excusable neglect," while others employed a more flexible approach. The *Pioneer* Court determined that requiring a neglectful movant to show that his failure to comply with a court deadline was caused by circumstances beyond his reasonable control "is not consonant with either the language of the Rule or the evident purposes underlying it." *Id*. at 388. Fealty to the ordinary meaning of the term "neglect" drove the Court to conclude that "by empowering the courts to accept late filings where the failure to act was the result of excusable neglect, Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id*. (internal quotation marks omitted).

Under this wide standard, Plaintiff's counsel's negligent failure to comply with the 30 day filing deadline prescribed by Fed. R. App. P. 4(a)(1)(A) is excusable. But more is needed. The court does not interpret Rule 4(a)(5)(A)'s 30 day grace period so as to

effectively transform the 30 day default rule for filing a notice of appeal into a 60 day time period.  "[T]he legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced–where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar."  *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003).

### C.    Is the Neglect Excused?  The Four *Pioneer* Factors

Merely establishing that excusable neglect exists does not automatically entitle a putative appellant to relief under Fed. R. App. P. 4(a)(5)(A).  The decision to grant or deny a request for enlargement of time under the Rule is committed to the sole discretion of district court.  As Justice O'Connor noted in *Pioneer*, "the court may withhold relief if it believes forbearance inappropriate; the statute does not require the court to forgive every omission caused by excusable neglect, but states that the court 'may' grant relief."  507 U.S. at 399 (O'Connor, J. dissenting).  The Court in *Pioneer* intended the lower courts' discretional inquiry to be far-reaching:  "Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  507 U.S. at 395.

The Supreme Court then established a four-part balancing test to guide the lower courts as they consider whether a claim of "excusable neglect" will lie: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the moving party's conduct was in good faith.  *Id*.  The Court of Appeals for the Ninth Circuit has determined that the "excusable neglect" inquiry under Fed. R. App. P. 4(a)(5)(A) should be undertaken within the *Pioneer* framework.  *Pincay*, 389 F.3d at 855.  It is to this four-factor test that the court now turns.

1. **Danger of Prejudice to the Non-Moving Party**

The first factor, the danger of prejudice to the non-moving party, directs the court to consider the impact on the Defendant, and on the "interests of efficient judicial administration" more generally, if Plaintiff is allowed to file a notice of appeal after the 30 day time period to take an appeal as of right has lapsed. *Pioneer*, 507 U.S. at 398. Defendant has not offered any specific evidence, such as detrimental reliance upon the court's August 22, 2006 Order granting summary judgment against all of Plaintiff's claims, that would militate in favor of a finding of prejudice in this case. This is common in the Rule 4(a)(5) context. As the Court of Appeals for the Seventh Circuit has noted, "[t]here is unlikely ever to be harm in the Rule 4(a)(5) setting, because the neglectful appellant has only 30 days after the expiration of his time for appealing in which to request relief." *Prizevoits v. Indianan Bell Tel. Co.*, 76 F.d 132, 134 (7th Cir. 1996). Judge Posner went on to state, however, that "[t]he word 'excusable' would be read out of the rule if inexcusable neglect were transmuted into excusable neglect by a mere absence of harm." *Id*.

2. **Length and Impact of Delay**

The second factor, which instructs the court to consider the length of the delay and its potential impact on judicial proceedings, need not detain the court for long. The length of the delay is minimal in this case because, although Plaintiff failed to file a notice of appeal as of right within the 30 day period prescribed by Fed. R. App. P. 4(a)(1)(A), Plaintiff filed her Motion for an extension of time within the 30 day grace period provided by Fed. R. App. P. 4(a)(5)(A). An additional delay of 30 days, even when combined with the time required for responsive pleadings to be filed and for the court to render this decision, is not significant in actual or relative terms. This factor therefore weighs in favor of granting Plaintiff's request for an extension of time to file a notice of appeal.

3. **Good Faith**

Plaintiff avers that "Plaintiff and her counsel have acted in good faith." (Doc. # 67 at 4.) Defendant does not argue otherwise. Plaintiff's good faith does favor her motion.

### 4. The Reason for the Delay

The third *Pioneer* factor directs the court to weigh the reason for the delay, including whether it was within the reasonable control of the movant. As was the case in *Pincay*, the parties seem to agree that this is the most important factor for the court to consider.

Plaintiff's counsel's first ground for excusable neglect is that he was too busy with other litigation matters to calculate and calender the appeal date, or double-check his secretary's calendering, as his system normally requires. But Plaintiff's counsel's trial calendar is entirely within his control. In fact, Plaintiff's counsel has an ethical obligation to ensure that he "shall provide competent representation to a client," an obligation which requires him to arrange his schedule such that each client receives all the attention "reasonably necessary for the representation." Ariz. R. Sup. Ct. Rule 42, E.R. 1.1. Counsel points to no authority for the proposition that his neglect of the 30 day deadline to file a notice of appeal in this case should be excused simply because his trial "commitment[s] became all consuming and demanded 100% of counsel's attention." (Doc. # 67 at 4.) The Court in *Pioneer* gave "little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the [due] date." 507 U.S. at 398. Therefore, this ground weighs against Plaintiff's Motion.

The second excuse proffered by Plaintiff's counsel–that the system he designed to avoid missing important court deadlines broke down in this isolated case–must be considered in light of the Supreme Court's statement in *Pioneer* that "inadvertence, ignorance of the rules, or mistakes construing the rules do not *usually* constitute 'excusable' neglect." 507 U.S. at 392 (emphasis added). Plaintiff's counsel's neglectful reliance upon his secretary's misconstruction of Fed. R. App. P. 4(a)(1)(A) is therefore not a presumptively compelling reason to excuse late filing. *See Meyer v. Qualex, Inc.*, 426 F. Supp. 2d 344, 345 (D.N.C. 2006) (holding *pro se* plaintiff's neglectful exclusion of weekends and holidays in calculating time period for filing notice of appeal not to be excused); *United States v. Alvarez-Martinez*, 286 F.3d 470, 473 (7th Cir. 2002) (noting that a "simple case of miscalculation" regarding

1  deadlines is not a sufficient reason to extend time for a criminal appeal under Fed. R. App.
2  P. 4(b)(2)).

3  In *Pincay*, the Court of Appeals for the Ninth Circuit invoked *Pioneer* for the
4  proposition that lawyer reliance upon support staff for calculating the appeal date suffices
5  as "excusable neglect" under Fed. R. App. P. 4(a)(5)(A) so as to authorize the district court's
6  exercise of discretion to extend the appeal time. To aid in determining whether the
7  qualifying neglect should, in the exercise of discretion, be excused, the en banc Court
8  directed district courts to consider four additional factors under *Pioneer*'s "reason for the
9  delay" rubric. They are whether the moving lawyer otherwise acted with diligence and
10 provided quality representation to his client, whether the opposing party has tried to
11 capitalize on petty mistakes, and the likelihood of injustice if an appeal is not allowed.
12 *Pincay*, 389 F.3d at 859. Applying these factors, the court finds in its discretion that
13 Plaintiff's counsel's failure to file a timely notice of appeal does not warrant excuse.

14 Plaintiff's counsel demonstrated a lack of diligence throughout his prosecution of this
15 case. For example, on June 2, 2006, the court granted Defendant's Motion for Sanctions
16 against Plaintiff, Doc. # 32, noting that Plaintiff's "failure to timely give the initial
17 disclosures under Rule 26(a)(1) was knowing and intentional and there was substantial
18 prejudice to the defendant in not receiving timely disclosure." (Doc. # 56.) The court
19 sanctioned Plaintiff by precluding a substantial number of Plaintiff's later-named witnesses,
20 and forbidding Plaintiff from offering documents listed in her belated disclosure statement
21 unless the documents had been disclosed by the defendant. (*Id.*) Plaintiff's motion for an
22 enlargement of time to complete depositions was also denied in light of Plaintiff's failure to
23 pursue discovery for six months. (*Id.*) In disposing of Plaintiff's case in its August 22, 2006
24 Order, the court noted that Plaintiff "attempted to circumvent the court's sanction–which held
25 that these witnesses could not be deposed because of untimely disclosures–by submitting
26 interview transcripts." (Doc. # 63 at 5.) That history undercuts any characterization of
27 Plaintiff's prosecution of this case as "diligent."
28

- 8 -

1	Plaintiff's counsel turned his attention back to this case on October 4, 2006, the last 2 day that he believed, in reliance upon his secretary, he could file a notice of appeal. Given 3 that it took Plaintiff's counsel eight days to meet with Plaintiff and determine if she desired 4 to appeal this court's Order, it is hard to see how counsel planned to obtain client approval 5 and file a timely notice of appeal even if October 4, 2006 were the correct deadline. It 6 therefore seems unlikely that, as Plaintiff's counsel now avers, "[b]ut for trial, the mistake 7 on the part of counsel would not have occurred and an appeal would have been timely filed 8 by September 21, 2006." (Doc. # 67 at 4.)

9	The balance of the *Pincay* considerations can be disposed of readily. The quality of 10 Plaintiff's counsel's representation in this case is undermined by the same facts that cut 11 against a finding of diligence, set forth above. Furthermore, there is no evidence that 12 Defendant has evidenced a "propensity" to "capitalize on [Plaintiff's] petty mistakes," which 13 would weigh in favor of granting the prayed-for relief. *Pincay*, 389 F.3d at 859.

14	Finally, the court puts principal weight on whether injustice would result if an appeal 15 is foreclosed. The court has reconsidered its August 22, 2006 dispositive Order, and remains 16 of the view that Plaintiff fell far short of the legal standard required to survive Defendant's 17 Motion for Summary Judgment. There was an accumulation of substantive and procedural 18 insufficiencies that undermine Plaintiff's case. *See*, *e.g.*, Doc. # 63 at 3-5 (rejecting 19 Plaintiff's exhibits 3-7 and 8-37 for failure to comply with the Federal Rules of Evidence 20 and violation of the court's discovery orders); *id*. at 10 (disparate treatment claim fails 21 because Plaintiff did not submit admissible evidence creating a triable issue as to pretext); 22 *id*. at 15 (hostile environment claim raised by Plaintiff for the first time in responsive 23 pleading); *id*. at 3 n.2 (noting Plaintiff's failure to comply with LRCiv. 56.1 by not linking 24 claims in opposition brief to factual allegations in her Statement of Facts). Viewing the case 25 as a whole, Plaintiff would be highly unlikely to obtain practical relief if a late appeal were 26 allowed. Defendant would be forced to incur additional substantial costs and legal expense. 27 The fourth *Pincay* factor cuts strongly against allowing a late appeal.

28

In weighing its discretion, this court is also mindful of Judge Learned Hand's characterization of statutes of limitations generally:

> They are often engines of injustice; their justification lies in furnishing an easy and certain method of solving problems which are intrinsically insoluble, or soluble only with so much uncertainty and after so much trouble that in the long run the game is not worth the candle. Perhaps they are not justifiable at all; equity has always been too sensitive to their possible harshness to accept them. But where they do exist one must be prepared for hard cases, and it is no answer that this is one.

*Helvering v. Schine Chain Theatres, Inc.*, 121 F.2d 948, 950 (2nd Cir. 1941).

Weighing all the discretionary factors, the court concludes that Plaintiff should not be allowed a late appeal, and her Motion will be denied.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Extension of Time to File Appeal, Doc. # 67, is denied.

IT IS FURTHER ORDERED that, in light of the court's decision in its favor, Defendant need not file a sur-reply and further evidence in opposition to Plaintiff's Motion, as originally permitted by this court's November 14, 2006 Order, Doc. # 74.

DATED this 22nd day of November, 2006.

_____
Neil V. Wake
United States District Judge